IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CR No. 23-CR-269 KWR |
| vs. | ) |
| | ) |
| LEROY SEGURA ROMERO, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States respectfully files this sentencing memorandum as responsive to defendant Leroy Segura Romero's Sentencing Memorandum. (Doc. 40). The United States has no objections to the Presentence Investigation Report ("PSR"). The United States respectfully moves this Court to sentence the defendant to the low-end of the applicable sentencing guidelines, 10 months, followed by 3 years supervised release, and a $100 special penalty assessment.

I.    **United States' Request for Sentence.**

Consistent with the plea agreement filed March 11, 2024, (Doc. 34) the United States agrees to recommend a low-end guideline sentence, the United States respectfully requests this Court sentence the defendant to 10 months in prison. His applicable guidelines are 10 to 16 months. Given the applicable guidelines, a tine served sentence is not inappropriate based on the nature of the offense and the defendant's history.

A.    **Nature and Circumstances of the Offense**

The Court shall consider the nature and circumstances of the offense and the history and

characteristics of the defendant. 18 U.S.C. §3553(a)(1). On May 25, 2022 at approximately 6:07pm, ATF Special Agent Hutson was contacted by representative from BMC Tactical, a Federal Firearms Licensee in Albuquerque, New Mexico. This employee reported that Leroy Segura Romero had purchased a Ohio Ordnance Works, Inc. M-240 belt-fed rifle for approximately $15,000 cash. The employee explained that BMC Tactical had advertised the firearm for sale on Instagram, and also noted that Segura Romero did not purchase ammunition for the firearm.




SA Hutson reviewed the ATF Form 4473 Firearms Transaction Record associated with the reported transfer and noted that Leroy Segura Romero affirmed he was the actual transferee/buyer of the firearm. He also identified his current address as [redacted] Rd NW, Albuquerque, NM, 87105, and checked the box swearing that he was not an unlawful user of marijuana. Records also indicated Segura Romero had purchased a Ruger PC Carbine 9mm Rifle that was transferred to him on September 16, 2021, while he certified the 4473 on September 10,

2

2021. On that form, he also used the same address.

A phone number of [redacted] 2360 was listed at the top of each form associated with firearms transfers from BMC Tactical to Segura Romero. Phone numbers are typically requested from customers by BMC Tactical staff in order to communicate with them regarding the associated firearms transfers. On May 27, 2022, Hutson spoke briefly to another BMC Tactical employee, J.N., via telephone. J.N. recalled that Segura Romero had a black Samsung Galaxy cellular telephone in his hands when he walked in the store, and it appeared as though Segura Romero was using Facebook, but not Messenger. J.N. also indicated he had helped take the firearm out to Segura Romero's red truck on the day of the transaction, and that he observed children's toys in the vehicle. J.N. reportedly asked Segura Romero if he had children, with Segura Romero indicating he did not have children and that the toys were his niece's. J.N. stated the Segura Romero was nervous and jumpy when purchasing the firearm. He did not seem to know anything about the firearm he was purchasing, or that he would need to assemble and load the ammunition. He did not know anything about the belt-fed mechanism, and J.N. has to explain what it was. Segura Romero paid with a roll of cash, which is uncommon for such expensive firearm purchases.

Subsequently, on May 25, 2022, SAs made contact with the residents of [redacted] Rd NW, Albuquerque, NM 87105, the address Segura Romero appeared to have identified as his current residence on ATF Form 4473 Firearms Transaction Records associated with the previously referenced firearms transfers. One resident denied Segura Romero lived at the residence currently, or ever, but that Segura Romero had stayed for a week or two previously. This resident indicated Segura Romero worked at the Jiffy Lube on Osuna as a tech. This

3

resident seemed to deny Segura Romero had a lot of money and indicated Segura Romero owed him $300.

Another resident denied knowing specifically where Segura Romero lived, explaining the last she knew he lived off of Louisiana, and had moved in with a friend named Jeff. The second resident denied Segura Romero had a lot of money, indicating that Segura Romero was struggling financially.

Shortly thereafter, Agent Hutson contacted Segura Romero by telephone at [redacted] 2360. An individual identifying themselves as Leroy answered the telephone. Agent Hutson provided his name and indicated he was with ATF. Agent Hutson inquired if Segura Romero (Leroy) would be able to meet up to look at some photographs. After this inquiry, an individual identifying themselves as Segura Romero's older brother, Jeff (later identified as Jeff Ewing), began speaking. Ewing indicated he was on the phone with his lawyer and asked Agent Hutson if this had to do with the gun "he" (understood to refer to Segura Romero) bought that day. Agent Hutson sought to clarify if the lawyer Ewing was referring to was Segura Romero's lawyer, which Ewing denied.

Ewing continued, explaining Segura Romero was his little brother, and he was overprotective of him. Ewing said his (Ewing's) attorney had told him that "you guys" (understood to refer to law enforcement) might call because Segura Romero had just purchased an M230. Ewing said that his (Ewing's) attorney was having him ask me questions because it was his (Ewing's) little brother. Ewing indicated that, if SAs wanted to meet, they would meet them at his shop, California Wheels & Tires, at Louisiana and Zuni. Hutson agreed to meet Ewing and Segura Romero at Ewing's shop approximately thirty minutes thereafter.

Throughout the entirety of the telephone conversation, and despite Segura Romero answering a phone number that had been listed atop the ATF Form 4473 Firearms Transaction Records associated with previous firearms transfers, Ewing dominated the conversation, with Segura Romero speaking only briefly.

At approximately 9:03PM, Agent Hutson received a phone call from [redacted] 2360 from Segura Romero indicating he was on his way and was almost there. SA Hutson inquired if it was the shop off of Louisiana and Zuni. In response, it appeared as though Ewing, not Segura Romero, responded in the affirmative. Hutson requested they meet at the Talin Market located across the street. Ewing asked if the meeting could take place in front of his shop as his lawyer had told him to get it on his cameras. Ewing stated that he would talk to his lawyer. When Hutson indicated he didn't need to speak to Ewing, Ewing replied, indicating Segura Romero was his little brother, agreeing that Hutson could speak with Segura Romero, and that he was looking out for his little brother's best interests.

At approximately 9:24PM, SA Hutson received a call from [redacted]2360, being greeted by Segura Romero. SA Hutson inquired if they were ok to meet SAs at the Talin Market. Segura Romero paused and, in the background, SA Hutson heard what sounded like Ewing providing some kind of instructions to Segura Romero, to the effect of, "tell them…tell them to…" with their dialogue not being audible for portions. Segura Romero indicated they were in the parking lot across the street.

Subsequently, Agents approached Segura Romero and Ewing. Agent Hutson observed Segura Romero, who he recognized from a previously observed driver's license photograph,

5

Ewing, and an unidentified male (hereafter FNU LNU 1).  Upon agents' approach, Ewing identified himself as 'Jeff.' Hutson displayed his ATF credentials to Ewing, Segura Romero, and FNU LNU 1, and indicated he was a Special Agent with ATF.

Agent Hutson asked Segura Romero if he would mind getting into his vehicle to go over events that had been happening in the area.  Segura Romero nodded in the affirmative and followed SA Hutson and SA Garcia to the vehicle.  Before the interview commenced, Segura Romero was advised of his Miranda rights, and nodded in the affirmative when asked if he understood.  Hutson inquired if Segura Romero was willing to speak with SAs for a few minutes, and Segura Romero replied, "of course."

During the course of the interview, Hutson inquired if it was fair to say that Segura Romero didn't live at the residence he listed on the Form 4473. Segura Romero affirmed this was correct, and indicated he lives with Jeff (Ewing).

Segura Romero initially denied knowing what he had done in the day after arriving home around four or five (understood to refer to four or five PM) and feeding his dog.  When Agent Hutson inquired if he went to any stores, he acknowledged he went to BMC Tactical where he purchased what he described as 'a little rifle.' This statement was suspicious because an Ohio Ordnance Works, Inc. M240-SLR 7.62x51 Rifle, compared to more common firearms, is a relatively large firearm. Segura Romero denied knowing what kind of gun he purchased at BMC Tactical, indicating he didn't recall the name. This is also suspect, as one would commonly expect an individual paying approximately $15,000 for a firearm to know the name of the firearm they are purchasing. When Hutson inquired if the firearm accepted clips (referring to ammunition magazines), or if it was belt-fed, Segura Romero denied knowing what "belt-fed"

was. When Hutson explained the concept to him, Segura Romero replied, "Oh no, no, no, not like that, nah not that crazy. I gue- like I said, just a normal…normal." This was also suspicious, as the firearm was a belt-fed firearm, and one would commonly expect an individual paying approximately $15,000 for a firearm to be familiar with the firearm they purchased.

Hutson inquired who was at the gun store when Segura Romero made the purchase. Segura Romero indicated it was just him. He stated he went home and put the firearm away. Hutson inquired if the firearm was secured safely at Segura Romero's home. Segura Romero affirmed it was. Hutson inquired if it was secured, and locked up, to which Segura Romero replied, "mmm, of course." He indicated he had put it away on top of a shelf. Thereafter, Segura Romero indicated he left and went to the shop to help his brother (understood to refer to Ewing) for a little bit.

During or around the time Agent Hutson was speaking with Segura Romero, other agents were speaking with Jeff Ewing. During this interaction, Ewing had made spontaneous statements identifying himself as a Bandidos member (understood to refer to the Bandidos Outlaw Motorcycle Gang (OMG)). SA Hutson and SA Wright reapproached Ewing, who was in close vicinity with FNU LNU 1. Ewing held his phone to his ear, indicating he was speaking with his lawyer. After Ewing stopped speaking into the phone, SA Hutson inquired if Ewing had an attorney. Ewing replied that, "we have a club attorney." Hutson explained he wanted to ask some clarifying questions but could not do that if Ewing was represented. Ewing replied, "I can be represented if I need to be. I can answer any questions you want." Subsequently, Ewing stated, "I belong to the Bandidos bro. I don't, I mean we are represented, our whole club…do I need legal representation at this time?" SA Hutson again sought to clarify if Ewing was represented by

7

counsel, to which Ewing replied, "I'm not, but I can be." Ewing then explained that, because of his club (understood to refer to the Bandidos OMG) issues, he cannot speak to law enforcement. Thus, for him to speak with SAs, he had to have someone there. SA Wright explained this incident was concerning the firearm from earlier that day to which Ewing replied, "What do you want to know about it?"

At that time, Agent Hutson advised Ewing of his Miranda rights. Ewing indicated he understood his rights and agreed to speak. Agent Hutson explained that he needed to know where the firearm was (referring to the M240 firearm purchased by Segura Romero earlier that day). Ewing replied, "it's at our home, where it needs to be. It's at my home. It's at his home." Hutson explained Segura Romero had made false statements on the ATF Form 4473 associated with the transfer regarding where Segura Romero's residence was, to which EWING replied, "…his mail is at (inaudible) home, where he's staying to get to work is at my home." Hutson explained he needed to see the firearm. Ewing indicated his brother (appearing to refer to Segura Romero) sold a race car to buy the firearm, and that he was not letting any of his (Segura Romero's) property leave his house. Ewing continued, "if I invite you guys to my house, cause that's a very big no no for me and my club, you guys can get my ass shot." SA Wright inquired if Ewing had a gun case that the firearm would fit in, to which Ewing replied, "I have the gun, I have the ca- he has the case that it came in." Ewing subsequently stated, "I'm really putting myself at risk. Literally for my brother talking to you guys, he can get in trouble." SA DuBois inquired if Segura Romero was 'in' (referring to membership in the Bandidos OMG). Ewing replied, "I'm his family. His dad was one. My dad was one. My grandpa's been one. It's…we don't have to join, we're born (inaudible)."

8

Several moments later, Agents asked Ewing if he would be willing to bring the firearm to their current location to show Agents. Ewing indicated he would get it to show it to show the SAs, but it wasn't being taken off of his brother. Ewing asked for a guarantee that it would not be snatched out of his hands. Ewing did retrieve the firearm, however when he returned, it was by then determined that Ewing was a convicted felon, and the firearm was indeed seized from him at that time. At this time, Ewing became visibly upset.

A subsequent search of Segura Romero's cell phone indicated that on May 24, 2022 at 9:15:46 PM (the day before the M240 purchase), Segura Romero sent Ewing a message reading, "Want me to call u when I get there or when I have it?" Ewing replied, "Win you have it." Segura responded, "OK. A short time later the two engaged in a video chat. Additionally, on May 25, 2022, 5:19pm, a third party sent Segura Romero a photograph appearing to depict the Ohio Ordnance M240 Segura Romero would purchase at 6:01pm that same day. Then at 5:54pm, the third party sent Segura Romero a message asking "Your [sic] good?"

Segura Romero deactivated his Face book account on May 26, 2022 at 12:24;44 AM, shortly after being released from custody but also after the seizure of his phone. On September 29, 2021, Segura Romero messaged a user named Koko blunt, "I have an AR for sale I don't know how much you guys trying to spend but I Paid 4 500 Bucks have all the receipts and I'm seling [sic] it for two grand is never been fired fully military edition."

There were also indicators of drug use on Segura Romero's phone as well as membership to a Facebook group that sells gun to each other.

Based on this information, the United States believes that not only is Mr. Segura Romero

guilty of lying on the Form 4473 about his drug use and address, but there is also ample evidence that he was not the actual buyer or transferee of the firearm.

B. <u>History and Characteristics of the Defendant</u>

The Defendant does not have much criminal history to speak of. This is why he is able to purchase a firearm from an FFL. The United States believes that the facts laid out above speak volumes of the Defendant's relevant personal characteristics. Based on the facts and circumstances, Jeff Ewing's actions indicated an ownership interest over the firearm, which he was not legally allowed to buy or possess. The fact that Leroy Segura Romero would spend $15,000 on a firearm he knows nothing about, does not know how to use, and did not purchase ammunition for, indicates that he did not buy it for himself, he bought it for someone else who was not legally able to purchase it.

C. <u>Factors Detailed in 18 U.S.C. § 3553(a)(2)</u>

In addition to considering the nature and circumstances of the offense and the history and characteristics of the defendant, the Court shall also consider:

> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant, and'
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

A 10-month sentence is appropriate because it would reflect the seriousness of the offense, as well as the Defendant's criminal history. His criminal history calculation is at category I, and his guidelines are 10 - 16 months.

Gun violence is a struggle not only in New Mexico, but around the country, and in

neighboring Mexico. The United States has a heightened interest in curbing gun purchases and possession by individuals who are not legally allowed to have a firearm, including those affiliated with Outlaw Motorcycle Gangs.[1]

This particular firearm, the belt fed M240, is not appropriate for hunting, and it is not appropriate for home defense. It is a weapon of war, meaning its purpose is to kill people. The purchase of such a weapon under false pretenses and other suspicious circumstances poses a grave danger to the community both here and across the border. A common way for guns like this to get into the hands of criminals and killers is by straw purchases such as this one. The straw purchaser deludes himself by acquiring the firearm on the front end, and telling himself he's not a part of the death and destruction at the end of it because he wasn't really sure where it was going to end up when he bought it for someone else. This behavior is criminal and should be punished so as to deter others from doing the same.

### D. Avoiding Unwarranted Sentence Disparity

In this case, the United States' requested sentence will ensure that there is no unwarranted sentencing disparity.  It falls within the guidelines range, and is a conceivable sentence for one who is a offense level 12 with no criminal history points.

---

[1] This court should know that further investigation showed Jeff Ewing was not a full Bandido, but part of a Bandidos support club, despite the posturing Ewing engaged in at the scene.

II. **Conclusion**

For the reasons cited above, the United States requests a 10-month sentence, as it agreed to recommend it the plea agreement. The United States further requests the Court sentence the defendant to three years supervised release.

    Respectfully submitted,

    ALEXANDER M.M. UBALLEZ
    United States Attorney

    *Electronically filed* 6/17/2024

    LETITIA CARROLL SIMMS
    Assistant United States Attorney
    PO Box 607
    Albuquerque, NM 87103
    (505) 346-7274

I HEREBY CERTIFY that I electronically filed
the foregoing with the Clerk of the Court
using the CM/ECF system which will send
notification to defense counsel.

   *Filed Electronically 6/17/2024*
LETITIA CARROLL SIMMS
Assistant United States Attorney